# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

**DERROW L TRAYLOR,**                 }
                                      }
**Plaintiff,**                        }
                                      }
**v.**                                }        **Case No.: 4:23-cv-1526-ACA**
                                      }
**SOCIAL SECURITY**                   }
**ADMINISTRATION,**                   }
**COMMISSIONER,**                     }
                                      }
**Defendant.**                        }

## MEMORANDUM OPINION

Plaintiff Derrow L. Traylor appeals the Social Security Commissioner's denial of his claim for disability insurance benefits and supplemental security income. (Doc. 1). Based on the court's review of the administrative record and the parties' briefs, the court **WILL REVERSE** the Commissioner's decision and **WILL REMAND** for further administrative proceedings.

## I.    PROCEDURAL HISTORY

In 2019, Mr. Traylor applied for disability insurance benefits and supplemental security income, alleging that his disability began on May 1, 2013. (*See* doc. 6-4 at 2–3, 12–13). The Social Security Administration denied Mr. Traylor's applications and he requested review by an administrative law judge ("ALJ"). (Doc. 6-5 at 2, 8, 15). After a hearing (doc. 6-3 at 42–58), the ALJ issued

an unfavorable decision (*id*. at 26–36). The Appeals Council denied review (*id*. at 2–5), making the Commissioner's decision final and ripe for the court's judicial review, *see* 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard of review, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). The

court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

To determine whether an individual is disabled, the Commissioner follows a five-step sequential evaluation. *Malak v. Comm'r of Soc. Sec.*, __ F.4th __, 2025 WL 837927, at *1 (11th Cir. Mar. 18, 2025) (citing 20 C.F.R. § 404.1520). First, the Commissioner must determine if a claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is so engaged, he is not disabled and the analysis ends. *Id*. §§ 404.1520(b), 416.920(b). Otherwise, the second question is whether the claimant has either "a severe medically determinable physical or mental impairment . . . or a combination of impairments that is severe." *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Severity means that the impairment or combination of impairments "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id*. §§ 404.1520(c), 416.920(c). If the claimant lacks a severe impairment or combination of impairments, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis proceeds to the third step.

At the third step, the Commissioner must determine if the claimant's impairments meet or equal a list of impairments set out in the regulations. *Id*. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do, the Commissioner must find

the claimant disabled and the analysis ends. *Id*. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, at the fourth step the Commissioner must determine the claimant's residual functional capacity. *Id*. §§ 404.1520(e), 416.920(e). If the claimant's residual functional capacity permits the claimant to perform past work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform past work, the Commissioner must determine whether the claimant's residual functional capacity, age, education, and work experience permit an adjustment to other work. *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If such an adjustment is possible, the Commissioner must find that the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.    EVIDENCE AND ALJ'S DECISION

In March 2019, Mr. Traylor went to an emergency room complaining of "minimal" shoulder pain and "minimal" swelling. (Doc. 6-9 at 5). An X-ray showed mild degeneration of his shoulder joint and calcium deposits in the rotator cuff. (Doc. 6-9 at 8); *see* Acromioclavicular Joint, Stedman's Med. Dictionary (2014); Osteoarthritis, Stedman's Med. Dictionary (2014); Calcific, Stedman's Med. Dictionary (2014). The provider diagnosed a shoulder sprain and prescribed Toradol. (Doc. 6-9 at 7). Several days after his emergency room visit, Mr. Traylor visited a health clinic complaining of shoulder pain on a scale of eight out of ten. (*Id.* at 21,

4

27). A musculoskeletal examination showed moderately reduced range of motion in his shoulder. (*Id.* at 29). The provider prescribed him Prednisone. (*Id.* at 27).

In May 2019, Mr. Traylor complained to a medical provider about right shoulder pain and displayed a moderately reduced range of motion. (Doc. 6-10 at 72, 77); *see* Arthralgia, Stedman's Med. Dictionary (2014). The provider noted that Mr. Traylor had a "mass and lump" in the "right upper limb" and referred him to a surgeon. (Doc. 6-10 at 77).

Two days later, Dr. Larry Johnston examined Mr. Traylor in connection with his Social Security application. (Doc. 6-9 at 40–44). At the examination, Mr. Traylor complained of shoulder and bilateral foot pain. (*Id.* at 40). Dr. Johnston noted that Mr. Traylor was not in any apparent distress and that he could get on and off the exam table and lie down and arise with no difficulty. (*Id.* at 42). He had a normal gait, did not use an assistive device to walk, and was able to squat. (*Id.* at 43). His feet were tender but able to bear weight and they were without swelling or other deformity. (Doc. 6-9 at 43). His strength in the upper and lower extremities was a five out of five. (*Id.* at 43). As relevant to this appeal, Dr. Johnston diagnosed him with degeneration in the right shoulder and bilateral foot pain. (*Id.* at 43–44). Dr. Johnston concluded that Mr. Traylor "would have pain standing and walking for long periods," "would have difficulty lifting and carrying with his right arm," had "no impairment in his ability to sit but can't stand or walk for long periods," and had

"some impairment in his ability to lift and carry objects." (*Id.*at 44). The physical examination showed some limitation in Mr. Traylor's range of motion in his right shoulder, but Dr. Johnston concluded that Mr. Traylor had "normal" dexterity. (Doc. 6-9 at 46).

Two months later, Mr. Traylor complained to a provider of pain in his right shoulder and "mass swelling," though he reported that pain medication relieved the pain and that he had not yet seen a surgeon. (Doc. 6-10 at 79). The provider again referred Mr. Traylor to a surgeon. (*Id.* at 83). Mr. Traylor also had an X-ray of his feet that showed minor hardening of the tissue in two joints and a minor deformity of two other joints, but no "focal or acute pathology otherwise." (Doc. 6-9 at 50); *see* Hallux Valgus, Stedman's Med. Dictionary (2014); Sclerosis, Stedman's Med. Dictionary (2014); Talonavicular, Stedman's Med. Dictionary (2014).

Later in July 2019, Mr. Traylor reported to a physician that he had begun experiencing pain, numbness, tingling, and weakness in his lower legs and feet. (Doc. 6-10 at 87). At that visit, he had a shortened gait but did not use an assistive device. (*Id.* at 92); *see* Antalgic Gait, Stedman's Med. Dictionary (2014). In August 2019, Mr. Traylor complained of worsening pain in his right shoulder. (Doc. 6-10 at 95). The provider noted a mildly reduced range of motion in that shoulder. (*Id.* at 100).

Also in July 2019, Dr. Robert Heilpern reviewed Mr. Traylor's medical records and opined that Mr. Traylor's allegations about the intensity of his pain were not consistent with the totality of the evidence because imaging showed only mild findings, and he had "essentially normal [range of motion] throughout." (Doc. 6-4 at 21; *see id*. at 24). Dr. Heilpern concluded that Mr. Traylor could occasionally lift and carry fifty pounds, frequently lift and carry twenty-five pounds, stand or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. (*Id.* at 22). He based that opinion on the finding of mild degeneration in his right shoulder and both feet, normal imaging of his right knee, "essentially normal" range of motion in both knees and right shoulder, normal gait, ability to squat and tandem walk, and normal range of motion and strength throughout. (*Id.*).

At a February 2020 visit to a health clinic, Mr. Traylor displayed a normal gait and normal range of motion in his left foot and ankle. (Doc. 6-10 at 120, 125). In 2021, an ultrasound of his right shoulder showed a mass corresponding to a palpable mass in the same area. (*Id.* at 132). The radiologist recommended further evaluation and an MRI. (*Id.*).

From 2020 to 2022, Mr. Traylor sought care at the Etowah Free Community Clinic. (Doc. 6-11 at 1–34). Provider notes from that period reflect occasional complaints of shoulder pain or feet swelling but no clinical or examination results explaining the source of the pain or swelling. (*Id.* at 6, 29, 32). In 2022, Dr. Charles

Griffith opined that due to his physical symptoms, Mr. Traylor could sit upright for four hours at a time, stand for two hours at a time, would need to lie down for an hour per eight-hour daytime period, would be off-task for ten percent of a normal workday, and would fail to report to work three days in a thirty-day period. (*Id.* at 35).

At a hearing, Mr. Traylor testified in relevant part that he worked three days a week at Krystal's, where he had to sit down every fifteen minutes. (Doc. 6-3 at 46). He stated that he could not work two days in a row because his feet would swell. (*Id.* at 47, 53). He testified that he could not "stand up too long" and had "issues with [his] feet," but he could not "afford to go to doctors. . . . [or] afford to get insurance to go to any doctors." (*Id.* at 48). But he did go "to the free clinic." (*Id.* at 48). He testified that he could walk for about twenty or twenty-five minutes before needing to sit down; he could stand for fifteen to twenty minutes before needing to sit down; he could sit for an hour with his feet propped up; a doctor had told him not to lift twenty pounds; and he could not stoop or squat. (Doc. 6-3 at 50–51).

The ALJ found that Mr. Traylor's arthritis of the right shoulder, arthritis of the knees, and hypertension were severe impairments, that his diabetes mellitus and substance abuse in reported remission were non-severe impairments, and that "[a]ny other diagnosis, ailment, or condition not specifically setout [sic] is both not severe and acute in nature or otherwise quickly resolves and is not expected to lead to any

work restrictions." (Doc. 6-3 at 29–30). The ALJ concluded that Mr. Traylor had the residual functional capacity to do medium work, as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), but with the exertional, postural, and environmental limitations found by Dr. Heilpern. (*Compare* doc. 6-3 at 31 *with* doc. 6-4 at 22–23).

In reaching that residual functional capacity, the ALJ found Dr. Heilpern's opinion persuasive, Dr. Johnston's opinion somewhat persuasive, and Dr. Griffith's opinion not persuasive. (Doc. 6-3 at 34). The ALJ explained that Dr. Heilpern's opinion was consistent with the evidence in one medical record from March 2019 and Dr. Johnston's July 2019 examination. (*Id.* at 33–34; *see* doc. 6-9 at 21–30, 40–46). The ALJ explained that Dr. Johnston's findings were "somewhat persuasive to the degree they are consistent with the record including examination findings and objective testing," but that he "provided broad nonspecific limitations and did not use vocational terms." (Doc. 6-3 at 34). The ALJ explained that Dr. Griffith's opinion was not persuasive because the limitations he posed were inconsistent with Mr. Traylor's work at Krystal's, and the March 2019 record and Dr. Johnston's July 2019 examination showed normal range of motion and normal strength. (*Id.* at 34).

Based on the residual functional capacity, the ALJ concluded that Mr. Traylor could not perform past relevant work but could perform other jobs that existed in significant numbers in the national economy, including store laborer, hand packager,

and floor waxer. (Doc. 6-3 at 34–35). Accordingly, the ALJ determined that Mr. Traylor was not disabled. (*Id.* at 36).

## IV.    DISCUSSION

Mr. Traylor contends that the ALJ failed to: (1) consider evidence of his shoulder impairment and the reason for his conservative treatment; (2) consider evidence of his foot impairments; and (3) adequately explain her assessment of the medical opinions of Dr. Heilpern, Dr. Johnston, and Dr. Griffith. (Doc. 12 at 13–30). The court will address each argument in turn.

### 1.   Shoulder Impairment

Mr. Traylor argues that the ALJ failed to consider evidence of his shoulder impairment because she did not discuss imaging showing a mass in his shoulder, she misstated Dr. Johnston's opinion about Mr. Traylor's limitations, and she did not inquire into the reason for his conservative treatment. (Doc. 12 at 14–16, 28–30).

The ALJ acknowledged that Mr. Traylor had complained to medical providers about shoulder pain and that March 2019 imaging showed mild abnormalities, but she found that Mr. Traylor's description of the extent of his pain and its limiting effects was not consistent with the evidence because as of May 2019, he had normal strength in his upper extremities and had received only conservative treatment. (Doc. 6-3 at 32). The ALJ also relied on Dr. Heilpern's "persuasive" 2019 opinion that Mr. Traylor could occasionally lift and carry fifty pounds and frequently lift and

10

carry twenty-five pounds and Dr. Johnston's "somewhat persuasive" 2019 opinion that Mr. Traylor had "so [sic] impairment with regard to the claimant's ability to lift and carry." (*Id.* at 33–34; *see* doc. 6-4 at 22 (setting out Dr. Heilpern's opinion)).

The ALJ must "consider all evidence available in [a claimant's] case record." 42 U.S.C. § 423(d)(5)(B). But "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision, so long as the ALJ's decision is not a broad rejection which is not enough to enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (alterations omitted). Moreover, the court reviews an ALJ's "erroneous statements of fact" for harmless error. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).

Social Security Ruling ("SSR") 16-3p sets out a two-step process for the Commissioner to followed in evaluating a claimant's alleged symptoms. 81 Fed. Reg. 14166-01, at 14167. First, the Commissioner must determine whether the claimant has "a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." *Id.* at 14167–68. If such an impairment exists, the Commissioner must then "consider[ ] the intensity, persistence, and limiting effects of an individual's symptoms." *Id.* at 14168. The Commissioner must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting

11

effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

As an initial matter, Mr. Traylor seizes on the ALJ's typo in describing Dr. Johnston's opinion. (*See* doc. 12 at 8 & n.2). The ALJ wrote that Dr. Johnson "reported so [sic] impairment with regard to the claimant's ability to lift and carry." (Doc. 6-3 at 34). Mr. Traylor contends that the ALJ intended to write "no impairment," which would contradict what Dr. Johnston's opinion that Mr. Traylor had "some impairment." (Doc. 23 at 8 & n.2; *see* doc. 6-10 at 44). This court believes that the ALJ's decision did include a typo, but that the typo was writing "so" instead of "some." In other words, the ALJ accurately described Dr. Johnston's opinion, which was that Mr. Traylor has "some impairment with regard to [his] ability to lift and carry." (Doc. 6-10 at 44).

Next, Mr. Traylor contends that the ALJ failed to discuss imaging showing a mass in his shoulder and all of his testimony about his shoulder. (Doc. 12 at 17–18). But an ALJ is not required to discuss "every piece of evidence in [her] decision, so long as the ALJ's decision is not a broad rejection which is not enough to enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (alterations omitted). The ALJ's decision relied on previous imaging

12

showing mild abnormalities, mild reduction in range of motion, conservative management, and normal strength. (Doc. 6-3 at 32). This court is bound by the ALJ's findings, "[e]ven if the evidence preponderates against [them]." *Crawford*, 363 F.3d at 1158–59 (quotation marks omitted). The undiscussed ultrasound showing a mass in his shoulder is not enough to overcome that deference. *See id.*

Finally, the court is not persuaded by Mr. Traylor's argument about the ALJ failing to consider poverty as the reason for his conservative course of treatment. (*See* doc. 12 at 28–30). The case he cites provides that the court will remand if "the ALJ primarily if not exclusively relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure." *Henry*, 802 F.3d at 1268 (quotation marks omitted). The ALJ here did not primarily or exclusively rely on Mr. Traylor's conservative course of treatment; she primarily relied on medical records, including imaging showing only mild abnormalities, and provider opinions about the types of limitations Mr. Traylor had. (*See* doc. 6-3 at 32–34). Accordingly, the court will not reverse the ALJ's decision based on errors relating to the shoulder impairment.

### 2. Feet Impairment

Mr. Traylor contends that the ALJ failed to consider evidence of his feet impairment because she did not include it in the list of severe or medically

determinable impairments and she did not discuss the X-rays of his feet showing abnormalities. (Doc. 12 at 16–19).

A medically determinable impairment is one that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1521, 416.921. In assessing a claimant's residual functional capacity, an ALJ must consider all medically determinable impairments, even those found to be non-severe. *Id.* §§ 404.1545(a)(2), 416.945(a)(2).

The ALJ expressly found the following medically determinable impairments: right shoulder arthritis, knee arthritis, hypertension, diabetes mellitus, and substance abuse in reported remission. (Doc. 6-3 at 29). She found the first three to be severe and the remaining two to be non-severe. (*Id.*). The ALJ then stated generally that she had "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity" and "[a]ny other diagnosis, ailment, or condition not specifically setout [sic] is both not severe and acute in nature or otherwise quickly resolved and is not expected to lead to any work restrictions that satisfy the required durational period." (*Id.* at 30). This catch-all language leaves the court unable to tell whether the ALJ found Mr. Traylor's alleged feet impairment to be non-medically determinable or medically determinable but non-severe.

14

A finding that the feet impairment was not medically determinable would be factually erroneous because "medically acceptable clinical and laboratory diagnostic techniques" show the existence of abnormalities in Mr. Traylor's feet. *See* 20 C.F.R. §§ 404.1521, 416.921; (doc. 6-9 at 50). And that error would not be harmless because ALJs are required to consider all medically determinable impairments in crafting a claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see Diorio*, 721 F.2d at 728. The ALJ here stated that she considered only medically determinable impairments in crafting Mr. Traylor's residual functional capacity, so if she found the feet impairment to be non-medically determinable, she did not consider it. (*See* doc. 6-3 at 29–30).

On the other hand, the ALJ might have found that the feet impairment was medically determinable but non-severe. (*See* doc. 6-3 at 29–30). But even if the court made that assumption, the court could not "affirm because, as [Eleventh Circuit] precedent holds, the ALJ's failure to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal in its own right." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019) (alteration and quotation marks omitted), *superseded in other part by* 20 C.F.R. § 404.1520c (2017). The ALJ's decision does not in any way address Mr. Traylor's alleged feet impairment (*see* doc. 6-3 at 26–36), so the court

cannot tell if she silently considered that impairment. Accordingly, the court **WILL REVERSE AND REMAND** the Commissioner's decision for this reason.

3.  Medical Opinions

Mr. Traylor contends that the ALJ failed to adequately explain the weight she gave to the medical opinions from Dr. Heilpern, Dr. Johnston, and Dr. Griffith. (Doc. 12 at 19–25).

Social Security regulations require the Commissioner to consider a number of factors when evaluating a medical source's opinion: supportability, consistency, relationship with the claimant (including the length, purpose, and extent of the treatment relationship, frequency of examinations, and examining relationship), specialization of the medical source, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Of these, the Commissioner considers supportability and consistency the most important. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). As a result, the Commissioner must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions," but he is "not required to[ ] explain how [he] considered the [other] factors." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The Eleventh Circuit has held that these regulations "fall[ ] within the express delegation to the Commissioner to adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing

the same for adjudicating disability claims." *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022) (quotation marks omitted).

    *a. Dr. Griffith*

Dr. Griffith, who saw Mr. Traylor at the Etowah Community Free Clinic for two years, opined that Mr. Traylor could sit upright for four hours at a time, stand for two hours at a time, would need to lie down for an hour per eight-hour daytime period, would be off-task for ten percent of a normal workday, and would fail to report to work three days in a thirty-day period. (Doc. 6-11 at 35; *see id.* at 1–34). The ALJ found his opinion not persuasive because it was not consistent with or supported by the record. (Doc. 6-3 at 34). In particular, the ALJ pointed to Mr. Traylor's work at Krystal's, a March 2019 medical examination showing normal range of motion, and Dr. Johnston's July 2019 examination showing normal strength in the upper and lower extremities. (*Id.*).

The court notes that the March 2019 medical examination actually showed moderately reduced range of motion in the right shoulder and right knee, with normal range of motion in the left knee and both feet. (Doc. 6-9 at 29). However, this error appears to be harmless because Mr. Traylor did testify about his ability to work at Krystal's part-time (doc. 6-3 at 46), and Dr. Johnston's examination did show normal strength in Mr. Traylor's upper and lower extremities (doc. 6-9 at 43). *See Diorio*, 721 F.2d at 728. Moreover, Dr. Johnston's examination also showed largely normal

range of motion everywhere. (Doc. 6-9 at 45–46). The ALJ adequately explained his conclusion about the weight to give Dr. Griffith's opinion, and this court may not reweigh the evidence underlying that conclusion. *See Winschel*, 631 F.3d at 1178. Accordingly, the court will not remand on the basis that the ALJ failed to adequately explain the weight to give Dr. Griffith's opinion.

### b. *Dr. Johnston*

Dr. Johnston examined Mr. Traylor in May 2019, finding that he had a normal gait, did not use an assistive device to walk, was able to squat, had foot tenderness but could bear weight, lacked foot swelling or deformity, and had normal strength in his upper and lower extremities. (Doc. 6-9 at 43). Dr. Johnston opined that Mr. Traylor "would have pain standing and walking for long periods," "would have difficulty lifting and carrying with his right arm," had "no impairment in his ability to sit but [could not] stand or walk for long periods," and had "some impairment in his ability to lift and carry objects." (*Id.* at 44). Dr. Johnston's physical examination showed minor limitations in Mr. Traylor's range of motion in his right shoulder but Dr. Johnston concluded that Mr. Traylor had "normal" dexterity. (*Id.* at 46).

The ALJ explained that Dr. Johnston's findings were "somewhat persuasive to the degree they are consistent with the record including examination findings and objective testing." (Doc. 6-3 at 34). The ALJ's only explicit explanation for that conclusion was that Dr. Johnston "provided broad nonspecific limitations and did

not use vocational terms."[1] (*Id.* at 34). However, elsewhere in the ALJ's decision, she described medical records showing relatively mild abnormalities of the shoulder, no abnormalities of the knee, conservative management for Mr. Traylor's shoulder pain, normal strength and minimally reduced range of motion, and Mr. Traylor's ability to squat and to walk without an assistive device. (*Id.* at 32–33). The ALJ weighed the medical evidence and determined that Dr. Johnston's opinion was only persuasive to the extent it was consistent with that evidence. (*Id.* at 34). This court may not "reweigh the evidence[ ] or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). Accordingly, the court will not disturb the ALJ's finding about the persuasiveness of Dr. Johnston's opinion.

### c.  Dr. Heilpern

Based on a review of Mr. Traylor's medical records through July 2019, Dr. Heilpern opined that Mr. Traylor's allegations about the intensity of his pain were not consistent with the totality of the evidence because imaging showed only mild findings and he had "essentially normal [range of motion] throughout." (Doc. 6-4 at 21; *see id.* at 24). Dr. Heilpern concluded that Mr. Traylor could occasionally lift and

---

[1] The relevance of Dr. Johnston's failure to use vocational terms is unclear. By regulation, the Commissioner finds "neither valuable nor persuasive" statements he reserves to himself, including "[s]tatements about what [a claimant's] residual functional capacity is using [the Commission's] programmatic terms about the functional exertional levels in Part 404, Subpart P, Appendix 2, Rule 200.00 instead of descriptions about [the claimant's] functional abilities and limitations." 20 C.F.R. §§ 404.1520b(c)(3)(v), 416.920b(c)(3)(vi).

carry fifty pounds, frequently lift and carry twenty-five pounds, stand or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. (*Id.* at 22).

The ALJ found Dr. Heilpern's opinion persuasive because it was "consistent with and supported by the record that the claimant had normal strength, normal gait, and did not require an assistive device (Exhibits 2F and 4F)." (Doc. 6-3 at 33–34). The first exhibit cited, Exhibit 2F, contained no statements about Mr. Traylor's strength, gait, or use of an assistive device. (*See* 6-9 at 21–30). However, the second exhibit cited, Exhibit 6F, is Dr. Johnston's opinion, which stated that Mr. Traylor had normal strength and gait and did not use an assistive device. (Doc. 6-9 at 43). Moreover, the ALJ had explicitly discussed the medical evidence relating to Mr. Traylor's shoulder and knees earlier in the decision. (Doc. 6-3 at 32–33). This court cannot disturb the ALJ's weighing of that evidence in evaluating the persuasiveness of Dr. Heilpern's opinion. *See Winschel*, 631 F.3d at 1178.

## V.    CONCLUSION

The court **WILL REVERSE** the Commissioner's final decision and **WILL REMAND** for further administrative proceedings solely on the ground that it is not clear whether the ALJ considered Mr. Traylor's medically determinable feet impairment in evaluating his residual functional capacity. The court will enter a separate final order consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 31, 2025.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE